IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

KEVIN HIEN PHAM and NATHALIE )
MONGES, )
    Plaintiffs, )
     )
    v. )      Case No. 1:12cv2
     )
BANK OF NEW YORK, MORTGAGE )
ELECTRONIC REGISTRATION )
SYSTEMS, INC., WITTSTADT TITLE )
& ESCROW COMPANY, LLC., and )
JOHN DOE, )
    Defendants. )

APR 1 0 2012

## MEMORANDUM OPINION

This removed state-law action is the second round in a long-running effort by defaulting

borrowers to avoid foreclosure on their property. More than a year before the defaulting

borrowers initiated this action in state court, they had filed an earlier state-court action also

seeking to stay a then-impending foreclosure. The defaulting borrowers' first suit named some

of the same entities sued here and raised some of the claims asserted here.[1] The first round was

rained out, so to speak, as the defaulting borrowers voluntarily non-suited the case before

defendants' dismissal motions could be decided. In this second round, the defaulting borrowers

name four defendants—the noteholder, the nominal beneficiary under the deed of trust, the

substitute trustee, and an unnamed purchaser. The gravamen of the complaint is that the current

noteholder lacks authority under Virginia law to proceed with the foreclosure. Notwithstanding

that two of the named defendants—the nominal beneficiary and the substitute trustee—are non-

---

[1] Notably, the defaulting borrowers' complaint in the first action asserted many claims *not*
asserted here, including that the mortgage-loan documents there at issue were void as the
securitization of the loan constituted "illegal gambling" and a "pyramid scheme." *See* Complaint
¶¶ 66–81, *Pham v. Bank of N.Y.*, No. 1:10cv1062 (E.D. Va. Sept. 23, 2010) (Doc. 1-1).

diverse, the noteholder in this case, as it did in the first case, removed this action on diversity grounds. Thereafter, all named defendants moved for dismissal of the complaint for failure to state a claim. In response, the borrowers argue that they have stated valid claims, but preliminarily seek remand on the ground that the nominal beneficiary and the substitute trustee are not diverse.

For the reasons that follow, the doctrine of fraudulent joinder compels the conclusion that removal was proper because the citizenship of the nominal beneficiary and the substitute trustee may be disregarded for purposes of the jurisdictional inquiry. And further, for the reasons also set forth here, plaintiffs have failed to state a claim as to any defendant. Thus, plaintiffs' motion to remand must be denied, and defendants' motions to dismiss must be granted.

## I.

The undisputed facts pertinent to the instant motions may be briefly summarized. Plaintiffs Kevin Hien Pham and Nathalie Monges, the borrowers, are citizens of Virginia presently living at 6146 Calico Pool Lane in Burke, Virginia (the "Burke property"). Defendant Bank of New York ("BNY"), the noteholder, is Delaware corporation with its principal place of business in New York. Defendant Mortgage Electronic Registration Systems, Inc. ("MERS"), the nominal beneficiary of the deed of trust, and Wittstadt Title & Escrow Company, LLC. ("Wittstadt"), the substitute trustee, are Virginia corporations. The alleged third-party purchaser, John Doe, is not specifically identified because the Burke property has not yet been sold, and hence the citizenship of this party is unknown.

On February 18, 2005, Pham executed a promissory note (the "Note") and a deed of trust securing it (the "Deed of Trust") in connection with the refinance of the loan secured by the Burke property. The Note evidences Pham's promise to pay the original lender, Encore Credit

Corporation ("Encore"), $350,000 to refinance Pham's mortgage loan. The Deed of Trust names both Pham and Monges as the borrowers, Encore as the lender, Dewey B. Morris as the trustee, and MERS as the nominal beneficiary. With respect to the beneficiary specifically, the Deed of Trust states that MERS "is acting solely as a nominee for Lender and Lender's successors and assigns." (Doc. 3-1 at 3; *see also id.* at 5). Additionally, the Deed of Trust provides that "Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale," the Burke property, and also that "the Note (together with this Security Instrument) can be sold one or more times without prior notice to the Borrower." (*Id.* at 5, 14).

Sometime in 2009, plaintiffs ceased making payments on the Note, and the loan went into default. Plaintiffs were advised that unless they cured the default, the Deed of Trust entitled the noteholder to begin foreclosure proceedings. Plaintiffs did not cure the default, and a foreclosure sale was scheduled. Attempting to halt the sale of the Burke property, plaintiffs filed an action in state court, which was subsequently removed to this district, that contained many of the same claims asserted here. *See* Complaint ¶¶ 104–12, *Pham v. Bank of N.Y.*, No. 1:10cv1062 (E.D. Va. Sept. 23, 2010) (Doc. 1-1). Although defendants in that case moved to dismiss the complaint, the motion was not resolved because plaintiffs voluntarily dismissed the case. *See Pham v. Bank of N.Y.*, No. 1:10cv1062 (E.D. Va. Nov. 29, 2010) (Order).

On November 21, 2011—almost one year after their initial action was dismissed—plaintiffs filed the instant action in state court against defendants BNY, MERS, Wittstadt, and an unnamed purchaser. In their four-count complaint, plaintiffs assert the following:

> (i) A request for declaratory judgment that BNY is not the secured party under Va. Code § 8.01-184 and thus cannot enforce the Deed of Trust;
>
> (ii) A claim to quiet title on the allegations that BNY cannot enforce the Deed of Trust and therefore cannot make entries in the

Burke property record, and that MERS cannot assign rights under
the Deed of Trust;

(iii) A request for declaratory judgment that BNY has no interest in
the Deed of Trust under Va. Code § 8.01-184; and,

(iv) A claim for wrongful foreclosure on the allegations that BNY
has no interest in the Deed of Trust and that Wittsdadt as trustee
breached its fiduciary duty to plaintiffs by attempting to foreclose
on behalf of an unauthorized party and relying on allegedly
inauthentic documents in doing so.

On January 3, 2012, BNY removed the action to federal court pursuant to 28 U.S.C. §
1441 invoking diversity jurisdiction under 28 U.S.C. § 1332. BNY, MERS, and Wittstadt each
filed a motion to dismiss the complaint for failure to state a claim pursuant to Rule 12(b)(6), Fed.
R. Civ. P. Plaintiffs seek remand of this action on the ground that subject-matter jurisdiction is
lacking.[2] The motions to dismiss and the motion to remand have been fully briefed and argued
and are now ripe for disposition.

## II.

The threshold question, as always, must be whether subject-matter jurisdiction exists.
This action was removed to federal court on diversity grounds. *See* 28 U.S.C. § 1441(a). Yet,
the removal statutes are not independent grants of subject-matter jurisdiction, and remand is
required if "it appears that the district court lacks subject matter jurisdiction" over the action,[3] as
where the parties-in-interest are not completely diverse and no other basis for subject-matter
jurisdiction exists. In this regard, plaintiffs argue that the parties are not completely diverse and

---

[2] Plaintiffs did not file a separate motion for remand, but rather incorporated arguments for
remand into their briefs in opposition to the motions to dismiss. Defendants' briefs addressed the
remand issue.

[3] 28 U.S.C. § 1447(c). *Accord* 28 U.S.C. § 1441(b)(2) ("A civil action otherwise removable
solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if
any of the parties in interest properly joined and served as defendants is a citizen of the State in
which such action is brought.").

therefore that remand is required. Defendants respond that because plaintiffs fraudulently joined the non-diverse defendants—MERS and Wittstadt—those defendants' citizenship must be disregarded for purposes of determining whether diversity jurisdiction exists. Thus, the question presented is whether the doctrine of fraudulent joinder operates here to render the citizenship of MERS and Wittstadt irrelevant for diversity purposes. If not, remand is required, but if so, subject-matter jurisdiction exists under § 1332(a), and the matter may proceed in federal court.

The fraudulent-joinder doctrine allows a district court to "assume jurisdiction even if . . . there are nondiverse named defendants at the time the case is removed" inasmuch as the court may "disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999). As one court has aptly put it, "[t]he term 'fraudulent joinder' is, in many ways, a misnomer, as it requires neither fraud nor joinder." *Trigo v. Travelers Commercial Ins. Co.*, No. 3:10cv28, 2010 WL 3521759, at *3 (W.D. Va. Sept. 7, 2010) (citing *Mayes*, 198 F.3d at 461 n.8 (noting that the term is "misleading" in this respect)). In particular, although the fraudulent-joinder doctrine applies where "there has been outright fraud in the plaintiff's pleading of jurisdictional facts," the doctrine also applies where, instead, "there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court[.]" *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993) (citation omitted). Furthermore, "the doctrine is potentially applicable to each defendant named by the plaintiff in the original complaint or anytime prior to removal" and thus does not depend on joinder subsequent to the filing of the complaint. *Mayes*, 198 F.3d at 461 n.8. Indeed, "the [removal] statute does not allow a district court to retain jurisdiction once it permits a nondiverse defendant to be joined in the case." *Id.* at 462. In short, application

- 5 -

of the fraudulent-joinder doctrine focuses not, as its name might suggest, on whether the plaintiff

knowingly seeks to add an improper party as a non-diverse defendant after removal, but rather on

whether the plaintiff properly named a non-diverse defendant before removal.

Because there is no suggestion that plaintiffs' naming of the non-diverse defendants was

fraudulent in fact,[4] the determination whether the non-diverse defendants are properly named,

and thus whether the fraudulent-joinder doctrine applies, depends on whether there is a

reasonable possibility that plaintiff can recover against these defendants. In this respect, the

citizenship of these defendants may be disregarded only if there is "no possibility" that plaintiffs

can recover against these non-diverse defendants on the basis of the stated claims. *See Hartley v.*

*CSX Transp. Inc.*, 187 F.3d 422, 424 (4th Cir. 1999). Application of the "no possibility"

standard requires a searching inquiry beyond the pleadings, with all genuinely disputed facts and

legal uncertainties resolved in plaintiffs' favor. *See id.* at 425; *AIDS Counseling & Testing Ctrs.*

*v. Group W Tele., Inc.*, 903 F.2d 1000, 1004 (4th Cir. 1990). Nonetheless, the "no possibility"

standard is not to be taken "literally," nor is it to be applied "mechanically." *Linnin v.*

*Michielsens*, 372 F. Supp. 2d 811, 819 (E.D. Va. 2005). Instead, the conclusion is properly

reached that "a defendant is fraudulently joined if there is no 'reasonable basis for predicting that

state law might impose liability on the facts involved.'" *Boss v. Nissan N. Am., Inc.*, 228 F.

App'x 331, 335 (4th Cir. 2007) (per curiam) (quoting *Great Plains Trust Co. v. Morgan Stanley*

*Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002)); *accord Linnin*, 372 F. Supp. 2d at 819

(holding that the fraudulent joinder doctrine applies where the complaint shows "no reasonable

basis for the district court to predict that the plaintiff might be able to recover against an in-state

---

[4] On this point, it is notable that the complaint in this action omits any federal claims and asserts
only state-law claims, whereas the complaint in the first, rained-out action asserted several
federal claims, including claims under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692
*et seq.* and the Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq.*

defendant"). In sum, subject-matter jurisdiction on the basis of diversity exists here unless the inquiry into plaintiffs' likelihood of recovery against the non-diverse defendants "identifies [a] glimmer of hope for the plaintiff[s]." *Hartley*, 187 F.3d at 426.

Here, it is pellucidly clear that there is no such "glimmer of hope" for these plaintiffs in their efforts to recover against MERS and Wittstadt because the claims merely recast a "show me the note" theory, which has been widely rejected as "contrary to Virginia's non-judicial foreclosure laws." *Gallant v. Deutsche Bank Nat'l Trust Co.*, 766 F. Supp. 2d 714, 721 (W.D. Va. 2011) (citation omitted). *Accord Minix v. Wells Fargo Bank*, 81 Va. Cir. 130, 2010 WL 7765589, at *4 (Fairfax Cnty. Aug. 24, 2010) (cautioning that courts should not "be creating a judicial foreclosure procedure when the legislature has mandated a non-judicial procedure to be appropriate") (citation omitted). Plaintiffs' claims against MERS and Wittstadt rest on the speculative allegation that the noteholder (i) did not authorize MERS to assign the Deed of Trust and (ii) did not authorize Wittstadt to begin foreclosure after plaintiffs had defaulted. But just as a noteholder is not "required to come to a court of law and prove its authority or standing to foreclose on a secured property,"[5] so too a nominal beneficiary or a substitute trustee, for the same reason, should not be required to prove in court that it has the noteholder's authority. To conclude otherwise would allow borrowers to compel judicial intervention in any foreclosure proceeding where a deed of trust has changed hands or a substitute trustee has been appointed. This result would be plainly contrary to Virginia law, which allows a trustee to foreclose on a loan in default, even if the original note cannot be found, without first seeking a court order. *See Horvath v. Bank of N.Y., N.A.*, 641 F.3d 617, 623 (4th Cir. 2011) (rejecting the argument that the noteholder "should have had to prove that it had standing to enforce the note before appointing

---

[5] *Gallant*, 766 F. Supp. 2d at 721.

[the substitute trustee] to conduct a foreclosure" and citing Va. Code § 55-59(7)). In sum, because Virginia law unequivocally disallows a "show me the note" claim against a noteholder, it also disallows similar "show me the noteholder's authority" claims against MERS and Wittstadt here.

Nor is there a "glimmer of hope" for the quiet-title claim against MERS based on MERS' assignment of the Deed of Trust; this claim, for several reasons, has no reasonable possibility of succeeding.[6] First, plaintiffs clearly fail to allege superior title, as they must to prevail on a quiet-title claim, given plaintiffs' admission that the Note is in default and that plaintiffs refuse to make payments. *See Tapia v. U.S. Bank, N.A.*, 718 F. Supp. 2d 689, 700 (E.D. Va. 2010) (dismissing a quiet-title claim on this basis) (citing *Maine v. Adams*, 277 Va. 230, 672 S.E.2d 862 (2009)). Furthermore, because under Virginia law "deeds of trust and mortgages are regarded in equity as mere securities for the debt, and whenever the debt is assigned the deed of trust or mortgage is assigned or transferred with it," MERS' assignment of the Deed of Trust was unnecessary to reflect the subsequent noteholder's interest therein and therefore was no more than a formality. *Horvath*, 461 F.3d at 623 (quoting *Williams v. Gifford*, 139 Va. 779, 124 S.E. 403, 404 (Va. Special Ct. App. 1924)). Finally, consistent with the decisions of other Virginia courts that have considered deeds of trust containing grants of authority similar to those in the Deed of Trust here, the Deed of Trust gives MERS, as the nominal beneficiary and as an agent of the noteholder, express authority to assign it. *See, e.g., Larota–Florez v. Goldman Sachs Mortg. Co.*, 719 F. Supp. 2d 636, 640 (E.D. Va. 2010), *aff'd*, 441 F. App'x 202 (4th Cir. 2011) (per

---

[6] Notwithstanding plaintiffs' unsupported argument to the contrary, it is, in any event, doubtful that plaintiffs have standing to challenge the assignment because plaintiffs were not party to the assignment, which involved only the former noteholder, the subsequent noteholder, and the noteholder's agent. *See, e.g., Wolf v. Fed. Nat'l Mortg. Ass'n*, --- F. Supp. 2d ----, 2011 WL 5881764, at **5–6 (W.D. Va. Nov. 23, 2011).

curiam). *Accord Sincere v. BAC Home Loans Servicing, LP*, No. 3:11cv38, 2011 WL 6888671, at *5 (W.D. Va. Dec. 30, 2011) (citing *Graves v. Mortg. Elec. Regis. Sys., Inc.*, No. CL-2010-17101, 2011 WL 3681735 (Va. Cir. Fairfax Cnty. June 29, 2011), *cert. denied*, No. 111738, slip. op. (Va. Dec. 20, 2011)). In sum, because plaintiffs cannot obtain relief from MERS on the basis of the stated claim, MERS' citizenship is appropriately disregarded for purposes of determining diversity jurisdiction.

Finally, there is no "glimmer of hope" for the wrongful-foreclosure claim against Wittstadt based on Wittstadt's foreclosure efforts as substitute trustee; this claim also has no reasonable possibility of succeeding. First, Virginia does not recognize a cause of action for wrongful foreclosure. *See Sheppard v. BAC Home Loans Servicing, LP*, No. 3:11cv62, 2012 WL 204288, at *7 (W.D. Va. Jan. 24, 2012). Additionally, although the trustee under a deed of trust is the agent of both the debtor and the creditor, Virginia law provides that the trustee's duties are "'limited and defined by the instrument under which he acts,'" and the Deed of Trust here—like the deed of trust in *Sheppard*—contains "no duty . . . requiring the trustee to ensure either that it was properly appointed or that the entity invoking the sale is the secured party with authority to foreclose." *Sheppard*, 2012 WL 204288, at *7 (quoting *Warner v. Clementson*, 254 Va. 356, 361, 492 S.E.2d 655, 657 (1997)). Thus, because plaintiffs' only claim against Wittstadt lacks any legal merit, Wittstadt's citizenship is properly disregarded for purposes of determining diversity jurisdiction.

Put simply, MERS and Wittstadt are merely agents of the real party at interest here, *i.e.*, the noteholder. A nominal beneficiary and a substitute trustee under a deed of trust act at the noteholder's direction, and even if there were some reason to believe that such direction was not given here, Virginia law does not give plaintiffs a cause of action to complain. It follows that

- 9 -

plaintiffs have no reasonable possibility of recovering against MERS or Wittstadt. Thus, these non-diverse defendants' citizenship is disregarded under the fraudulent-joinder doctrine for purposes of the jurisdictional inquiry.

Because complete diversity exists among the remaining, proper parties, subject-matter jurisdiction over this action exists pursuant to § 1332(a). Plaintiffs' additional arguments to the contrary lack merit. First, plaintiffs' citations to the orders in *Ghandi v. Bank of New York*[7] and *Mohammadi v. EMC Mortgage Corp.*[8] are unavailing because those orders did not set forth the reasons for remand, which might have been informed by factual backgrounds or procedural postures distinct from those present here. Additionally, plaintiff's contention that the amount in controversy does not exceed $75,000 is easily rejected because success of plaintiffs' claims against BNY, which contends that it has a 100% interest in the Note and the Deed of Trust, would eliminate BNY's right to receive payments on a $350,000 promissory note and its right to invoke the power of sale with respect to property valued at over $300,000. In other words, because the "object[s] of the litigation,"[9] *i.e.*, BNY's interest in the Note and the Deed of Trust, are valued at well over $75,000, it plainly does not "appear to a legal certainty that the claim is really for less than the jurisdictional amount." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938). Accordingly, because subject-matter jurisdiction over the plaintiffs' action exists pursuant to § 1332(a), the motion to remand must be denied, and the Rule 12(b)(6) motions must be decided.

---

[7] No. 1:11cv1365 (E.D. Va. Feb. 21, 2012) (Order) (remanding the case); No. 1:11cv1365 (E.D. Va. Mar. 26, 2012) (Order) (denying motion for reconsideration of remand).

[8] No. 1:12cv221 (E.D. Va. Mar. 26, 2012) (remanding the case).

[9] *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977).

**IV.**

Dismissal pursuant to Rule 12(b)(6), Fed. R. Civ. P., is appropriate where the complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949. In this respect, it is also true that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to *legal* conclusions." *Id.* (emphasis added). *Accord Eastern Shore Markets v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Instead, the complaint must allege facts that, if true, plausibly satisfy each element of the claims for which relief is sought. *Id.* at 1950. Accordingly, a motion to dismiss must be granted if the complaint does not allege a sufficient factual basis to create a plausible inference that plaintiff is entitled to relief.

Based on the current record,[10] BNY is the current noteholder and also was the noteholder during the actions of which plaintiffs complain. At the motions hearing, BNY made part of the record a scan of the original "wet ink signature" Note, which according to counsel's representations is in the trustee's possession in a secure facility. The scanned copy of the Note,

---

[10] The record on a motion to dismiss includes "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

which bears an undated endorsement-in-blank from Encore (the original lender),[11] appears

identical to the copy that Wittstadt sent to plaintiffs just after the notice of foreclosure had

issued. (*See* Doc.1-3 at 31–35; Compl. ¶ 32). A prospectus supplement indicates that in March

2005, Encore transferred the Note, along with many other mortgage loans, to a mortgage loan

trust and named BNY as the indenture trustee of that trust. (*See* Doc. 1-3 at 42–43). The loan

servicer's June 29, 2009 response to plaintiffs' Qualified Written Request ("QWR") indicated

that "[t]he current Note holder is The Bank of New York, as indenture trustee, for Encore Credit

Receivables Trust 2005-1." (Doc. 1-3 at 18). MERS effected a formal assignment of the Deed

of Trust to BNY in August 2009, after plaintiffs had ceased making payments. (Doc. 1-3 at 40).

Wittstadt's November 4, 2011 foreclosure notice identified BNY as the noteholder and further

noted Wittstadt had "been requested by the holder of the note . . . to commence immediate action

to foreclose against said property for default in the payment of the Note." (Doc. 1-3 at 25). In

sum, the documents in the record establish that BNY currently possesses the Note and was the

noteholder (i) when MERS assigned the Deed of Trust to BNY in August 2009, (ii) when BNY

appointed Wittstadt as substitute trustee under the Deed of Trust in October 2011, and (iii) when

Wittstadt initiated foreclosure on the Burke property in November 2011.[12]

     Plaintiffs' bald assertion that the Note and other documents in the record are not authentic

is, put gently, unworthy of credence. *See United States ex rel. Constructors, Inc. v. Gulf Ins.*

---

[11] Because Encore ceased to exist as an entity some time in 2007, it naturally follows that Encore placed the blank endorsement on the Note on or before its dissolution in 2007.

[12] Given this, plaintiffs' reliance on the dissent in *Jones v. Brandt* is misplaced as that case, which considered whether a power of attorney implicitly authorized the attorney-in-fact to substitute the payable-on-death beneficiary of the testator's certificate of deposit, is clearly inapposite. 274 Va. 131, 645 S.E.2d 312 (2007). Even assuming, *arguendo*, the issues here were analogous to those in *Brandt*, the record evidence in this case establishes that Encore endorsed the Note in blank before BNY acquired it.

*Co.*, 313 F. Supp. 2d 593, 596 (E.D. Va. 2004) (noting that "[i]n the event of conflict between

the bare allegations of the complaint and any attached exhibit, the exhibit prevails") (citing

*Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991)).  With

respect to whether the Note bears a valid endorsement in blank, it is clear that the photocopied

Note attached to the response to plaintiffs' QWR did not reflect the endorsement because the

endorsement appears on the *back* of the signature page of the original Note, which was not

photocopied.  Indeed, the background markings on the copy of the endorsement page clearly

reflect a mirror image of the Note's signature page, as happens when a photocopier captures the

back side of a two-sided page.[13]  Additionally, the bare allegations in the complaint that the

inclusion of MERS as beneficiary in the Deed of Trust and the appointment of a substitute

trustee were somehow "fraudulent" find no support in any specific factual allegations in the

complaint or indeed in any record evidence.  Moreover, no factual allegation or record evidence

supports plaintiffs' speculative assertion that certain documents in the record are signed by

individuals lacking authority to do so.  Finally, this record discloses no factual basis for

concluding that any other entity besides BNY possesses the Note.[14]  In short, plaintiffs have not

---

[13] In this respect, the copy of the Note proffered by BNY also appears identical to the copy of the Note that BNY attached to its motion to dismiss the first action, which BNY filed on September 27, 2010.  (*See* Doc. 3-2, 1:10cv1062).

[14] This observation underscores the absurdity of plaintiffs' assertion that BNY is not the noteholder.  If it is true that BNY does not possess the Note, then it must also be true that another entity either possesses the Note or is entitled to rights as lender under the Note.  That entity cannot be Encore because Encore no longer exists.  Given this, plaintiffs' assertion that BNY does not possess the Note depends on the incredible allegation that some unidentified entity acquired the Note from Encore, and yet has sat idly by as plaintiffs have ceased making payments and BNY has begun asserting rights reserved for the noteholder.  The assertion is also tantamount to the outlandish claim that BNY, MERS, and Wittstadt have conspired to deprive an unnamed entity of its rights under the Note and the Deed of Trust.

alleged, forecasted, or adduced any evidence that any document in this record is inauthentic or otherwise suspect.

To resolve the motions to dismiss, well-settled Virginia law as surveyed by the Fourth Circuit in *Horvath v. Bank of New York, N.A.* is controlling here. 641 F.3d 617 (4th Cir. 2011). In *Horvath*, the plaintiff in that case—represented by the lawyer for plaintiffs in this matter— made several arguments in support of its position that BNY, which at that time was the noteholder, lacked authority under Virginia law to foreclose on the plaintiff's property even though the loan was indisputably in default. The Fourth Circuit found plaintiff's position wholly unpersuasive, stating that "it is difficult to see how [plaintiff's] arguments *could possibly be correct*" given that "BNY possessed the note at the time it attempted to foreclose on the property." *Id.* at 622 (emphasis added).[15] The Fourth Circuit began its analysis by noting that "Virginia has attempted to enhance commerce within the state by ensuring that negotiable instruments" such as promissory notes "are freely transferable." *Id.* at 621. Specifically, a promissory note endorsed in blank "may be freely transferred," and "[w]ho ever possesses an instrument endorsed in blank has full power to enforce it." *Id.* at 621–22 (citing Va. Code §§ 8.3A-104, 8.3A-201(b), 8.3A-203(b), & 8.3A-205(b)). Thus, the Fourth Circuit concluded that "once Horvath defaulted . . . Virginia law *straightforwardly* allowed BNY to take the actions that it did," which included appointing a substitute trustee and directing that trustee to initiate foreclosure proceedings. 641 F.3d at 621–22 (emphasis added).

*Horvath* is, in all pertinent respects, factually indistinguishable from the case at bar. First, the key terms of the note and deed of trust at issue in *Horvath* are identical to terms of the

---

[15] *See also* Hr'g Tr. 11:9–24, *Bernardo v. Nat'l City Real Estate Servs., LLC*, No. 1:10cv80 (E.D. Va. Apr. 30, 2010) (Brinkema, J.) (calling the argument to this effect "smoke and mirrors . . . given the nature of Virginia law" and "basic, fundamental contract law as well as lender law as it relates to real estate transactions in Virginia").

Note and Deed of Trust at issue here.  The note in *Horvath* and the Note here both state that they are freely transferrable.  *Compare* 641 F.3d at 619 (reciting language from the note that "the Lender may transfer this note" and that "[t]he Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder'") (emphasis removed) *with* (Doc. 1-3 at 20) (containing identical language).  Both notes bear endorsements in blank.  The deed of trust in *Horvath* and the Deed of Trust here both provide that "[t]he Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower."  *Compare* 641 F.3d at 619 *with* (Doc. 3-1 at 5).  Both deeds of trust named MERS as the nominal beneficiary "for Lender and Lender's successors and assigns."  *Compare* 641 F.3d at 620 *with* (Doc. 3-1 at 3).  Next, in *Horvath* and in the case at bar, the note was transferred to a mortgage-securitization trust naming BNY as trustee, and BNY acquired each note pursuant to a trust agreement.  *See* 641 F.3d at 620.  Finally, in *Horvath* and in the case at bar, BNY appointed a substitute trustee that would later initiate foreclosure proceedings.[16]  *See id.*

    In light of *Horvath*'s reading of Virginia law and of mortgage instruments identical in all material respects to those at issue here, it must be concluded that in this case, the "Lender" and "Note Holder" under the Note and the Deed of Trust, the "[p]erson entitled to enforce" an instrument under Va. Code § 8.3A-301, the "party secured by the deed of trust" under Va. Code § 55-59(9), and the "beneficiary" under Va. Code § 55-59.1(B) all refer to the entity possessing

---

[16] It should be noted that unlike in *Horvath*, where the substitute trustee actually conducted a sale of the secured property, no foreclosure sale has yet occurred here.

the Note, namely, BNY.[17] *See Horvath*, 641 F.3d at 623 (observing that in the case there at bar, "BNY held 100 percent of the monetary obligations due from [plaintiff] by virtue of being the holder of the note [plaintiff] signed, bringing its actions squarely within the scope of [Va. Code] § 55-59(9)"); *id.* at 624 (noting that "[t]he better reading" of the deed of trust there at issue "is to read the term 'Lender' as applying not only to [the original lender] but to any subsequent purchaser of the deed of trust" and that "common sense suggests that *things could not be any other way*") (emphasis added). Thus, as the noteholder, BNY was authorized under the plain terms of the Note and the Deed of Trust and under well-established Virginia law (i) to direct assignment of the Deed of Trust to itself, (ii) to appoint a substitute trustee, and (iii) to invoke the power of sale given plaintiffs' default and thereby to direct the trustee to initiate foreclosure.

To summarize, the claims against MERS and Wittstadt plainly fail for the reasons stated *supra*, and the remaining claims fail because neither BNY nor the hypothetical John Doe purchaser has exceeded their legal rights in connection with the mortgage loan at issue. The Fourth Circuit's holding in *Horvath* that Virginia law grants the noteholder authority to exercise certain rights under a deed of trust compels this result, particularly given that *Horvath* is factually indistinguishable from this case. This authority is fatal to plaintiffs' claims for declaratory judgment, quiet title, and wrongful foreclosure against BNY and to the contingent, unripe claim against the John Doe purchaser. Plaintiffs' arguments to the contrary are plainly meritless[18] as they are directly contrary to Virginia law as surveyed by the Fourth Circuit in

---

[17] *See also Bernardo* Hr'g Tr. 16:24–17:3 (Brinkema, J.) (rejecting the argument that only the loan trust is entitled to receive payment and adding that "[y]ou don't have the law that supports you right now").

[18] In particular, these meritless arguments include, *inter alia*, plaintiffs' contentions that (i) the Deed of Trust is ambiguous as to the duties of MERS, (ii) BNY must demonstrate its status as a bona-fide purchaser before invoking the power of sale, (iii) MERS is not a "true" beneficiary

*Horvath.* Indeed, plaintiffs cite no cases, and none has been found, in which a court faced with similar facts and similar claims to those present here has concluded that those claims are valid under Virginia law. Thus, because plaintiffs' claims are based exclusively on untenable legal theories, the complaint must be dismissed in its entirety.

## V.

Given the absence of any authority supporting plaintiffs' claims, it is not easy to see how plaintiffs' counsel could have had a good-faith belief that all of the theories he has advanced in this matter "are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law" under Rule 11(b)(2), Fed. R. Civ. P. Indeed, plaintiffs' counsel's experience in other foreclosure-avoidance actions should have made clear that the claims and theories advanced here and in those cases lack merit. In this district alone, *all* of the many foreclosure-avoidance actions plaintiffs' counsel has initiated have been voluntarily dismissed, remanded, or ultimately unsuccessful on the merits.[19] In the Fourth Circuit, plaintiffs' counsel has fared no better;[20] to the contrary, the Fourth Circuit has *never*

---

under the Deed of Trust, (iv) MERS may act only as "necessary" under law, (v) only the original lender may foreclose, and (vi) BNY must produce to plaintiffs its lost-note affidavit prior to initiating foreclosure.

[19] *See, e.g., Munoz v. BAC Home Servicing, LP*, No. 1:11cv582 (E.D. Va. Aug. 1, 2011) (Order); *Gibson v. Wells Fargo Bank, N.A.*, No. 1:10cv304, 2011 WL 221188 (E.D. Va. Jan. 19, 2011); *Bolouri v. Bank of Am., N.A.*, No. 1:10cv225, 2010 WL 3385177 (E.D. Va. Aug. 24, 2010); *Larota-Florez v. Goldman Sachs Mortg. Co.*, 719 F. Supp. 2d 636 (E.D. Va. 2010); *Zambrano v. HSBC Bank USA, Inc.*, No. 1:09cv996, 2010 WL 2105164 (E.D. Va. May 25, 2010); *Ruggia v. Wash. Mutual*, 719 F. Supp. 2d 642 (E.D. Va. 2010).

[20] *See Horvath*, 641 F.3d at 626 (observing that appellant's "arguments on this score stem more from his views of what the law ought to be than from what it actually is" and declining "to accept his invitation to rewrite Virginia law"); *Bernardo v. Nat'l City Real Estate Servs.*, 435 F. App'x 240 (4th Cir. 2011) (per curiam) (concluding that "the current holder of the note[ ]has authority to foreclose" and rejecting arguments to the contrary in light of *Horvath*). *See also Gibson v. Wells Fargo Bank, N.A.*, --- F. App'x ----, 2012 WL 11237 (4th Cir. Jan. 4, 2012) (per curiam) (affirming in light of *Horvath*); *Shafer v. Citibank, N.A.*, 447 F. App'x 466 (4th Cir.

concluded that any of his foreclosure-avoidance theories was meritorious.  It is therefore unsurprising that plaintiffs' counsel has been specifically and repeatedly admonished for his practice of advancing meritless claims in foreclosure-avoidance actions,[21] and yet, as this case shows, he continues to assert substantially similar claims based on many of the same arguments. Nonetheless, as a matter of judicial grace, an order to show cause under Rule 11(c)(3), Fed. R. Civ. P., will not issue *sua sponte*.

An appropriate order will issue.

Alexandria, Virginia
April 10, 2012

/s/

T. S. Ellis, III
United States District Judge

---

2011) (per curiam) (same); *Zambrano v. HSBC Bank USA, Inc.*, 442 F. App'x 861 (4th Cir. 2011) (per curiam) (same); *Ruggia v. Wash. Mutual*, 442 F. App'x 816 (4th Cir. 2011) (per curiam) (same); *Bolouri v. Bank of Am., N.A.*, 442 F. App'x 816 (4th Cir. 2011) (per curiam) (same); *Tapia v. U.S. Bank, N.A.*, 441 F. App'x 166 (4th Cir. 2011) (per curiam) (same); *Pazmino v. LaSalle Bank N.A.*, 447 F. App'x 467 (4th Cir. 2011) (per curiam) (same); *Larota-Florez v. Goldman Sachs Mortg. Co.*, 441 F. App'x 202 (4th Cir. 2011) (per curiam) (same).

[21] For example, in early 2010 Judge Brinkema, ruling from the bench in *Bernardo v. National City Real Estate Services*, observed that counsel for plaintiffs here had "a zero success track record with these theories" and opined that "a prudent attorney might sort of cool it for a while until you see where the law is going." *Bernardo* Hr'g Tr. 20:22–25. Judge Brinkema also warned that "[d]own the road, you may have to worry about Rule 11 sanctions[.]" *Id.* 22:3–4. Months later, the Circuit Court for Fairfax County ordered these plaintiffs' counsel to pay a $9,885.00 sanction on the ground that he and his firm "continue to propound the same arguments in materially identical proceedings for the improper purpose of delaying his clients' eviction from their former homes, to the detriment of judicial efficiency and all other parties involved." *Minix*, 81 Va. Cir. 130, 2010 WL 7765589, at *4.